UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

James Allen Martin,

                 Plaintiff,

vs.

Dennis Benson, Steve Youngs,
and Scott Giannini,

                 Defendants.             Civ. No. 09-195 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment.  See Docket No. 17.  For these purposes, the Plaintiff appears pro se, and the Defendants appear by Sarah A. McGee, Assistant Minnesota Attorney General.  For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted.

## II.  Factual and Procedural Background

The Plaintiff is a patient of the Minnesota Sex Offender Program ("MSOP"), who is currently confined at the Minnesota Security Hospital in Moose Lake, Minnesota.  He commenced this action on January 29, 2009, by filing a Complaint seeking relief under Title 42 U.S.C. §1983.  See, Docket No. 1.  The Plaintiff's original Complaint was later superseded by a "Supplemental Complaint," see Docket No. 15, which is now the operative pleading in the case.  Reading the Plaintiff's pleadings indulgently, as we must, see, Williams v. Carter, 10 F.3d 563, 567 (8th Cir. 1993)("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding.")[citing cases], the Plaintiff alleges that the Defendants violated his constitutional right to Due Process by using excessive force when they "extracted" him from a room at the Minnesota Security Hospital on August 1, 2008.

On June 26, 2008, approximately five (5) weeks before the events giving rise to this lawsuit, MSOP staff members determined that the Plaintiff should be taken to a "Protective Isolation Unit" ("PI").  The Plaintiff was to be moved to PI, "pursuant to a criminal investigation alleging an assault against a MSOP staff member."

Supplemental Complaint, Docket No. 15, at p. 1¶1 of Section IV; Affidavit of James Allen Martin ("Martin Aff."), Docket No. 25, p. 1¶2. On that occasion, MSOP staff members ordered the Plaintiff to submit to handcuffs before they attempted to move him to PI, but the Plaintiff refused. Id. Two (2) staff supervisors repeatedly asked the Plaintiff to voluntarily submit to handcuffing, but he still refused. Id. The supervisors then threatened to "use force against" the Plaintiff, but he still refused to be handcuffed. Id. The staff members then forcibly restrained the Plaintiff, and placed him in hand and leg cuffs. Id. The Plaintiff suffered no injury as a result of that incident, id., and he was subsequently moved to a room in PI.

As of August 1, 2008, the Plaintiff was still residing in the PI Unit. Prior to that date, he had been practicing a physical fitness regimen, which evidently gave him prodigious upper body strength. The Plaintiff claims that he was then doing 750 "standard push-ups" per day. Id. at ¶3.

MSOP staff members came to the Plaintiff's PI room on August 1, 2008, in order to conduct a routine search for contraband items. See, Supplemental Complaint, supra at p.1¶2 of Section IV. The Plaintiff was directed to leave his room and walk to an adjacent common area, and he complied with that directive. Id. Rick O'Connor ("O'Connor"), who was a Security Counselor, performed a "pat-down body search of

[the Plaintiff]," and instructed him to open his mouth.  Id.  Although the Plaintiff did open his mouth, O'Connor told him to open it wider.  Id.  The Plaintiff refused to comply with that instruction.  Id.  The staff then directed the Plaintiff to return to his room.  See, Martin Aff., supra at pp. 2-3¶4.

Shortly after the Plaintiff returned to his room, he was visited by another security counselor, Defendant Scott Giannini ("Giannini").  Giannini informed the Plaintiff that the staff wanted to move him to an adjacent room.  Id. at p. 3¶5. Giannini asked the Plaintiff whether he would move voluntarily, and the Plaintiff asked what would happen if he refused.  Id.  Giannini told the Plaintiff that, if he did not move voluntarily, then he "would be denied exercise/hygiene breaks, and placed on bag meals."  Id.  The Plaintiff then told Giannini that he would not voluntarily move to the adjacent room.  Id.

About ten (10) minutes after the Plaintiff refused to move to the adjacent room, four (4) security counselors came to his room -- namely, Giannini, O'Connor, Rick Kesty ("Kesty"), and the Defendant Steve Youngs ("Youngs").  Id. at p. 3¶6. According to the Plaintiff, he was lying on the bed in his room, and one of the security counselors "rushed forward behind a shield."  Id.  The security counselors reached the bed in "no more than one second," and the Plaintiff "reflexively" raised his legs up

toward the security counselors.  Id.  The Plaintiff contends that he was "immediately pinned down by the shield and weight of the four counselors" and he was "unable to move."  Id.  He further contends that he "did not resist the staff" as they pulled him "onto the floor to apply handcuffs and leg shackles."  Id.[1]

In the Plaintiff's recounting of the "extraction" maneuver, he said nothing during the incident, and the only security counselor who said anything was Youngs, who "shouted several times 'stop resisting!'"  Id.  As explained by the Plaintiff:

> Giannini, O'Connor, and Kesty held onto my legs and left arm so I was pinned and unable to move, then Youngs grabbed hold of my wrist and twisted downward on my arm/shoulder for approximately 15 seconds.

Id. at pp. 3-4¶6.

After Youngs gained control of the Plaintiff's right arm, he was handcuffed with his arms behind his back, his legs were shackled, and he was carried into another room.  See, Supplemental Complaint, supra at p. 2¶6 of Section IV.

---

[1] Each of the security counselors, who were involved in this incident, prepared his own written report shortly after the incident occurred.  According to those reports, the Plaintiff tried to kick the security counselors, tried to bite one of them, and continuously struggled and resisted their efforts to subdue him.  See, Affidavit of Sarah McGee, Docket No. 21, ("McGee Aff."), at Exhibits 2,3,4 and 5.  However, for present purposes, the Court accepts the Plaintiff's averment that he merely raised his legs against the security counselors, and did not otherwise resist their efforts to remove him from his room.

The Plaintiff was then "placed face-down on a bed and instructed to remain prone in a hog-tie position." <u>Id.</u>  Although the security counselors directed the Plaintiff to keep his legs in a "hog-tie" position, he refused to do so but, instead, he "placed them flat on the bed." <u>Id.</u>  Since the Plaintiff refused to do as he was told, "Defendant Giannini then forcefully pressed [the Plaintiff's] legs downward toward his body in the hog-tie position and held them there for several minutes." <u>Id.</u>  The Plaintiff avers that Giannini's action "caused severe bruising and substantial pain," which "lingered for approximately three weeks." <u>Id.</u> at p. 3¶7.  The Plaintiff attests that he felt "significant pain while standing or walking during that time."  See, <u>Martin Aff.</u>, supra at p. 4¶12.

After the Plaintiff was forcibly removed from his room, the MSOP staff completed their search of the room.[2]  When the search was completed, the Plaintiff was carried back into his room, at which time, he was released from restraints.  See, <u>Supplemental Complaint</u>, supra at pp. 2-3¶6 of Section IV.

When the Plaintiff returned to his room, a nurse came to see him, and attempted to talk to him.  According to the Plaintiff, he "was still in a state of shock," and he

---

[2]According to an Incident Report that was prepared by one of the security counselors,  the Plaintiff's room "was cleared of all the items [the Plaintiff] could not have."  See, <u>McGee Aff.</u>, supra at Exhibit 2.

"therefore ignored her." See, <u>Martin Aff.</u>, supra at p. 4¶11. He later determined that his "right arm and shoulder suffered from an internal pain and tightness which became worse whenever the arm moved." <u>Id.</u> at p. 5¶13. However, the Plaintiff did not seek any medical attention for his alleged pain until August 7, 2008 -- six (6) days after he was removed from his room. At that time, he submitted a Health Concern Form ("HCF") to MSOP staff, which described the pain in his arm. <u>Id.</u> at p. 5¶14. Two (2) days later, he verbally asked to have a doctor look at his arm. <u>Id.</u> A nurse offered to give the Plaintiff some ice and pain medication for his arm, but he refused that offer because he deemed it to be inadequate. <u>Id.</u>

During the following year -- i.e., from approximately August of 2008 to July of 2009 -- the Plaintiff sought medical care for his right arm on about a half dozen occasions. Pain medications were offered and exercises were prescribed, and the Plaintiff experienced episodes of improvement, as well as some set backs. The Plaintiff further alleges, as follows:

> As of July 1, 2009, [the Plaintiff's] arm/shoulder strength had improved to where he was again able to perform

normal daily activities with little pain or discomfort, but could not put heavy exertion or direct stress on it without aggravating the recurring injury.

Supplemental Complaint, at p. 5¶16 of Section IV.[3]

On August 29, 2008, approximately one (1) month after the incident at issue in this case, the Plaintiff filed a "Patient Grievance," in which he claimed that MSOP staff had used excessive force, "without warning," when they removed him from his room. Id. at p. 4¶10. The Plaintiff's grievance was dismissed, and he then filed an administrative appeal. Id. at p. 4¶¶10-11. His appeal also was dismissed, at which time, the Plaintiff was informed that his "initial refusal to comply with the directive to move to another cell allowed the staff to take 'appropriate actions.'" Id. at p. 7 ¶11.

The Plaintiff subsequently filed the present Section 1983 civil rights action. According to the Plaintiff, Youngs violated his constitutional right to Due Process by using excessive force while helping other MSOP security counselors to remove him

---

[3]The current Record includes additional information about the medical treatment that the Plaintiff has received, and the course of his recovery. See, Supplemental Complaint, supra at pp. 3-6¶¶8, 12-17 of Section IV; Martin Aff., supra at pp. 5-8¶¶14-25; McGee Aff., supra at Exhibits 7-9, 13-22. However, that information will not be recited here, because it has no direct bearing on the resolution of the Defendants' current Motion for Summary Judgment. For now, we simply accept the Plaintiff's assertion that, when he was removed from his room on August 1, 2008, he suffered a significant injury to his right arm and shoulder, which was treated off and on during the following twelve (12) months.

from his room on August 1, 2008. He specifically claims that Youngs violated the Constitution when he twisted the Plaintiff's arm "at a downward angle for approximately 15 seconds," while attempting to handcuff the Plaintiff. <u>Id.</u> at p. 2¶5. The Plaintiff also claims that Giannini violated the Constitution when he pressed the Plaintiff's legs "downward toward his body in the hog-tie position and held them there for several minutes." <u>Id.</u> at p. 5¶6.

The Plaintiff's third Section 1983 claim is brought against the Defendant Dennis Benson ("Benson"), who allegedly is the Chief Executive Officer ("CEO"), of MSOP. The Plaintiff alleges that Benson"issued a memorandum detailing a new Use of Force Policy by MSOP staff toward patients." <u>Id.</u> at p. 3¶9. The memorandum, which was issued on August 27, 2008, allegedly authorized "more expansive methods to maintain order." <u>Id.</u> at pp. 3-4¶9.

The Plaintiff candidly acknowledges that the alleged "new Use of Force policy" provides that "unjustified or excessive use of force by staff will not be tolerated." See, <u>Plaintiff's Memorandum In Opposition To Motion For Summary Judgement ("Plaintiff's Memorandum")</u>, <u>Docket No. 24</u>, at p. 18.[4] Despite this explicit

---

[4]A copy of the policy, that is referenced in the Supplemental Complaint, is included in the present record at <u>Plaintiff's Exhibits</u>, <u>Docket No. 25-1</u>, Exhibit 10.

prohibition against the use of excessive force by staff at MSOP, the Plaintiff contends that the new Use of Force Policy actually "relaxed the standards to authorize and carry out the use of force against program detainees." Id. at p. 19. The Plaintiff maintains that Benson violated the Federal Constitution by establishing a policy that "provides much less protection from unnecessary use of force against civil detainees than inmates serving prison sentences receive." Id. at pp. 19-20.

The Plaintiff's pleading discloses that he is attempting to sue all three of the named Defendants in both their individual and official capacities. See, Supplemental Complaint, supra at p. 1¶¶2-3 of Section IV. However, the Plaintiff has expressly abandoned his official capacity claims against the Defendants. See, Plaintiff's Memorandum, supra at p. 10. Therefore, those claims will not be further addressed, and we will simply recommend that those claims be summarily dismissed, together with the Plaintiff's individual capacity claims.

The Plaintiff is seeking a Judgment against the three named Defendants, in their individual capacities, for "punitive damages * * * in the amount of $1000 for the injury to his legs, and $25,000 for the injury to his arm/shoulder." Supplemental Complaint, supra at p. 1¶4 of Section V.

III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003), cert. denied, 540 U.S. 823 (2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned</u>

Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004);

Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v.

University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

      B.    Legal Analysis.

      1.    Qualified Immunity Defense. The Defendants contend that they are entitled to Summary Judgment based upon the doctrine of qualified immunity. According to that doctrine, government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).

When qualified immunity is asserted in a Section 1983 action, we "must first consider the threshold question of whether, construed in a light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." Andrews v. Fuoss, 417 F.3d 813, 816 (8th Cir. 2005), quoting Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005); see also, Wilson v. Layne, supra at 609. "Only then do we ask whether that right was clearly established at the

time of the alleged violation." Jones v. Shields, 207 F.3d 491, 494 (8ᵗʰ Cir. 2000),

quoting Wilson v. Layne, supra at 609; see also, Coonts v. Potts, 316 F.3d 745, 750

(8ᵗʰ Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

The Supreme Court has recently summarized the two-step process for

determining qualified immunity as follows:

> First, a court must decide whether the facts that a plaintiff
> has alleged * * * or shown * * * make out a violation of a
> constitutional right. * * *    Second, if the plaintiff has
> satisfied this first step, the court must decide whether the
> right at issue was 'clearly established' at the time of
> defendant's alleged misconduct. * * * Qualified immunity
> is applicable unless the official's conduct violated a clearly
> established constitutional right.

Pearson v. Callahan, ---- U.S. ----, 129 S.Ct. 808, 815-16 (January, 21 2009)[citations
omitted].[5]

---

[5]We recognize that "the Supreme Court [recently] instructed that we are
'permitted to exercise [our] sound discretion in deciding which of the two prongs of
the qualified immunity analysis should be addressed first in light of the circumstances
in the particular case at hand."    Parrish v. Ball, 594 F.3d 993, 1001-1002 (8ᵗʰ Cir.
2010), quoting Pearson v. Callahan, --- U.S. ---, 129 S.Ct. 808, 818 (January, 21
2009).  While advising that the Saucier procedure is helpful, see, Saucier v. Katz, 533
U.S. 194 (2001), but no longer mandatory, the Supreme Court explained, as follows:

> [T]he rigid Saucier procedure comes with a price.  The
> procedure sometimes results in a substantial expenditure of
> scarce judicial resources on difficult questions that have no
> effect on the outcome of the case.  There are cases in which
> it is plain that a constitutional right is not clearly
> established but far from obvious whether in fact there is

Here, the Defendants contend that they are entitled to qualified immunity under step one (1) of the two (2) part test that has been prescribed by the Supreme Court. In other words, the Defendants contend that the facts presented by the Plaintiff do not show a violation of his constitutional rights. We agree.

a) <u>Standard of Review: "Excessive Force" Claims</u>. The Plaintiff claims that Youngs and Giannini violated his constitutional rights by using "excessive force" while conducting the search of his room on August 1, 2008, and he claims that Benson violated his constitutional rights by promulgating a policy that authorized Youngs and Giannini to employ excessive force.

---

such a right. District courts and courts of appeals with heavy caseloads are often understandably unenthusiastic about what may seem to be an essentially academic exercise.

<u>Pearson v. Callahan</u>, supra at 818.

Accordingly, where appropriate, Courts are permitted to dispose of the qualified immunity issue on the second prong, as to whether a violation of a clearly established constitutional right has occurred, without considering the first prong of <u>Saucier</u>. See, <u>Parrish v. Ball</u>, supra (holding that the second prong was dispositive, because the unlawfulness of the defendant's actions was not clearly established); <u>Norman v. Schuetzle</u>, 585 F.3d 1097, 1103 (8th Cir. 2009). In this case, we have found it appropriate to dispose of the qualified immunity question, pursuant to the first prong of <u>Saucier</u>.

The Constitution, itself, makes no specific reference to "excessive force." However, it is well established that the Constitution prohibits governmental authorities from using excessive force against individuals who are being held in custody. For prisoners, i.e., individuals who are being punished for criminal convictions, the protection against excessive force stems from the Eighth Amendment prohibition against "cruel and unusual punishments." Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)("Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment.").

However, since the Plaintiff was not a "prisoner" when the events giving rise to this lawsuit occurred, the Eighth Amendment is not directly applicable here. However, Federal Courts have consistently held that, under the Fourteenth Amendment's Due Process Clause, Eighth Amendment principles are also applicable to non-prisoners who are held in governmental custody, such as pre-trial detainees. See e.g., Crow v. Montgomery, supra at 601; Vaughn v. Gray, 557 F.3d 904, 908 n. 4 (8th Cir. 2009); Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007)("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as

imprisoned convicts receive under the Eighth Amendment."), cert. denied, 552 U.S. 826 (2007).

Federal case law also establishes that, for purposes of resolving excessive force claims, civilly committed individuals are analogous to, and should be treated the same as, pre-trial detainees. Andrews v. Neer, supra at 1061; see also, Serna v. Goodno, 567 F.3d 944, 948-949 (8th Cir. 2009)(reaffirming the analogous status of pre-trial detainees and civilly committed individuals), cert. denied, ---- U.S. ----, 130 S.Ct. 465 (2009). All of the parties, here, have accepted that proposition. See, Plaintiff's Memorandum, supra at p. 12; Defendants' Memorandum in Support of Motion for Summary Judgment, ("Defendants' Memorandum"), Docket No. 19, at p. 12.

Therefore, we conclude, and all parties agree, that, although the Eighth Amendment is not directly applicable to this case, nevertheless, we must look to Eighth Amendment precepts in order to determine the viability of the Plaintiff's current excessive force claims.

The Plaintiff has summarized the Eighth Amendment principles that are applicable to his claims as follows:

> "To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the

deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." Irving v. Domire, 519 F.3d 441, 446 (8th Cir. 2008) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)) (Internal quotations omitted) "Eighth Amendment cases are analyzed in light of the specific claim raised." Id. "In excessive force claims, the subjective inquiry is whether the force used was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting [Arnold v. Groose, 109 F.3d 1292, 1298 (8th Cir. 1997), and] Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986) (Internal quotations omitted).

Plaintiff's Memorandum, supra at p. 12.[6]

---

[6] The Second Circuit Court of Appeals has also provided a clear and succinct summation of the applicable legal principles:

An official's use of force violates the Eighth Amendment when two requirements are met: the use of force "must be, objectively, sufficiently serious," and "the prison official involved must have a sufficiently culpable state of mind." Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir. 1997) (internal quotation marks and citations omitted). "The objective component of an Eighth Amendment claim is * * * contextual and responsive to contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 * * * (1992) (internal quotation marks and citation omitted). "[S]ome degree of injury is ordinarily required" to satisfy this standard, but the injury need not be "serious" or "significant" "as long as the amount of force used is not de minimis." United States v. Walsh, 194 F.3d 37, 50 (2nd Cir. 1999). The subjective standard is satisfied where an inmate shows "that the prison officials involved 'had a 'wanton'

The Supreme Court detailed the objective component of an Eighth Amendment excessive force claim in <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

There, the Court reaffirmed that, when a prisoner seeks relief for any kind of alleged Eighth Amendment violation, he must show that "the alleged wrongdoing" by prison officials "was objectively 'harmful enough' to establish a constitutional violation." <u>Id.</u> at 8, quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 303 (1991). The Court advised that "[t]he objective component of an Eighth Amendment claim is * * * contextual," <u>Id.</u>, which means that it will take on somewhat different meanings in different types of Eighth Amendment cases. For example, to sustain an Eighth Amendment conditions-of-confinement claim, a prisoner must show "**extreme deprivations**," because "routine discomfort" is an expected aspect of a prison sentence. <u>Id.</u> at 9 [emphasis added]. To sustain an Eighth Amendment claim based

---

state of mind when they were engaging in the alleged misconduct," <u>Griffin v. Crippen</u>, 193 F.3d 89, 91 (2nd Cir. 1999) (quoting <u>Davidson v. Flynn</u>, 32 F.3d 27, 30 (2nd Cir. 1994)), which "turns upon 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Romano v. Howarth</u>, 998 F.2d 101, 105 (2nd Cir. 1993) (quoting <u>Hudson</u>, 503 U.S. at 7 * * * ).
<u>Bellotto v. County of Orange</u>, 248 Fed.Appx. 232, 235 (2nd Cir. 2007).

upon inadequate health care, a prisoner must show "deliberate indifference" to a "**serious**" medical need.  Id. [emphasis added].

In Eighth Amendment excessive force cases, the objective component looks at the nature and degree of the force employed, and how that force is manifested in the claimant's injury.  As the Supreme Court recently reiterated, "[t]he extent of injury may * * * provide some indication of the amount of force applied."  Wilkins v. Gaddy, ---- U.S. ----, 130 S.Ct. 1175, 1178 (February 22, 2010).  However, the Court also underscored, as follows:

> Injury and force * * * are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Id. at 1178-79.

The subjective component of an Eighth Amendment excessive force claim was discussed at some length in Whitley v. Albers, supra.

Whitley identified four (4) factors that Courts should consider when addressing the subjective component of an Eighth Amendment excessive force claim: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that

the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008), quoting Whitley v. Albers, supra at 321.

In Whitley, the Court reasoned that prison officials, and other governmental custodians, "'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Whitley v. Albers, supra at 321-322, quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979). Such deference must be afforded not only to measures taken in response to actual imminent danger, but also to "prophylactic or preventive measures," which are undertaken to avoid such dangers and maintain institutional discipline. Id. at 322. The Court declared that "[t]he infliction of pain in the course of a prison security measure * * * does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. at 319.

In Hudson, the Supreme Court again emphasized that a claimant must always establish the defendant's culpable state of mind. The Court held that --

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

<u>Hudson v. McMillian</u>, supra at 6-7.

Finally, <u>Whitley</u> teaches us that "[C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives," and "**[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain * * * the case should not go to the jury**." <u>Whitley v. Albers</u>, supra at 322 [emphasis added].

b) <u>Legal analysis</u>. Guided by the foregoing legal principles, we separately address the Plaintiff's claims against each of the three (3) named Defendants.

i) <u>Youngs</u>. The Plaintiff claims that Youngs violated his constitutional right to Due Process by using excessive force while he was assisting three (3) other security counselors who were attempting to move the Plaintiff to a different room. The Plaintiff contends that he was merely lying on his bed in his room, posing no danger to anyone, when Youngs and the other security counselors

burst into his room, without any warning, and attempted to forcibly restrain him. While trying to handcuff the Plaintiff, Youngs allegedly grabbed the Plaintiff's right wrist and "twisted downward" for about fifteen (15) seconds. Youngs' efforts to handcuff the Plaintiff allegedly injured the Plaintiff's shoulder.

Given the averments set forth in the Plaintiff's Supplemental Complaint and Affidavit, we accept -- for now -- that the force used by Youngs could satisfy the objective component of an excessive force claim. Accepting Plaintiff's averments as true, as we must for Summary Judgment purposes, it appears that the amount of force that was applied by Youngs was substantial enough to cause a significant injury to the Plaintiff's shoulder. Although the Plaintiff did not immediately seek medical care for his shoulder, the present Record reflects that he did sustain some type of actual injury. Assuming the validity of the Plaintiff's description of Youngs' actions, and the resulting injuries, we are now unable to conclude that the force employed by Youngs was merely de minimis. See Hudson v. McMillian, supra at 9-10 ("de minimis uses of physical force" are "exclude[d] from constitutional recognition"), quoting Whitley v. Albers, supra at 327.

Next, we consider the subjective component of the Plaintiff's excessive force claim against Youngs. In particular, we consider whether the Plaintiff has presented

sufficient evidence which, if accepted as true by a Jury, would prove that Youngs possessed a sufficiently culpable state of mind, when he forcibly removed the Plaintiff from his room. We begin by considering whether there was any need for the application of force. See, Whitley v. Albers, supra at 321. The Plaintiff contends that "[t]here was absolutely no need for the application of force." Plaintiff's Memorandum, supra at p. 14. We find the Plaintiff's argument to be without merit.

The Plaintiff argues that there was no need to use force against him, because he did not present any imminent risk of harm to anyone at the specific moment when Youngs, and the other security counselors, entered his room. However, the Supreme Court has explicitly recognized that the use of force is constitutionally permissible not only when there is "an actual confrontation with riotous inmates," but also when there is a need for "prophylactic or preventative measures intended to reduce the incidence of * * * breaches of prison discipline." Whitley v. Albers, supra at 322. In other words, force is permissible not only to restore discipline, but also to **maintain** discipline. See, Hudson v. McMillian, supra at 6.

Here, Youngs and his fellow security counselors were charged with maintaining the security of the MSOP facility and, in an effort to fulfill that responsibility, the security counselors wanted to search the Plaintiff's room for contraband. When they

approached the Plaintiff, they found him to be uncooperative, and apparently, somewhat hostile.  The Plaintiff defiantly refused to open his mouth so as to allow a security counselor to complete a search of his person and, after he was returned to his room, he informed Giannini that he would not voluntarily leave for his room to be searched.  In light of the Plaintiff's resistence to the search for contraband, the security counselors had reasonable grounds to be concerned that he might be hiding something in his room.[7]

Giannini told the Plaintiff that disciplinary sanctions would be imposed if he did not leave his room voluntarily, but the Plaintiff still refused to cooperate. Furthermore, the Plaintiff had previously refused to voluntarily leave his room at least once before and, on that occasion, MSOP staff were compelled to use physical force to remove him.  Given that state of affairs, it was not unreasonable for Youngs, and his fellow security counselors, to conclude that it was necessary to forcibly remove the Plaintiff from his room.

---

[7]See, <u>Affidavit of Linda Anderson</u>, <u>Docket No. 20</u>, at p. 2¶6 ("Searching the mouth is an important element of a search as clients have been known to conceal contraband in their mouth," and the "[f]ailure to completely comply with a search leads us to suspect the patient may be hiding contraband in his room and/or on his person.").

The Plaintiff also contends that the MSOP staff should have given him additional warnings of their intent to forcibly remove him from his room.  This argument has no merit for two (2) reasons.  First, the Plaintiff had ignored a threatened use of force once before, see <u>Allen Aff</u>., supra p. 2¶2, so the MSOP staff had no reason to believe that he would respond to an additional warning prior to the incident at issue here.  Second, the MSOP staff could have reasonably determined that the "extraction" maneuver would be safer for everyone, including the Plaintiff, if the Plaintiff did not have an opportunity to anticipate their arrival and prepare a defense.

We have also considered whether the type of force that was used was suitable to the circumstances.   Youngs and his colleagues were confronted by an uncooperative, defiant, recalcitrant individual, who had the physical strength to perform "750 standard push-ups daily."  See, <u>Id</u> at p. 2¶3.  There is evidence in the Record showing that the Plaintiff "threw a punch, which hit a staff member" just over a month before the incident at issue here. See, <u>McGee Aff.</u>, supra at Exhibit 1.  Thus, Youngs, and his colleagues, were undoubtedly concerned for their own personal safety when they were assigned the unenviable task of removing the Plaintiff from his room in order to facilitate a search for contraband.   Nevertheless, the security counselors did not use any weapons, and the evidence suggests that they tried to

accomplish their objective -- to restrain the Plaintiff, and remove him from his room -- as quickly and efficiently as possible.

It appears that each security counselor was assigned a specific duty during the extraction process, and Youngs' duty was to put handcuffs on the Plaintiff. See, <u>Martin Aff.</u>, supra pp. 3-4¶6. Based on the Plaintiff's own description of the extraction procedure, it cannot be said that the force used during the procedure was, overall, significantly disproportionate to the circumstances. See, <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1067 (8th Cir. 2006)("Handcuffing inevitably involves some use of force.").

Finally, and most importantly, we have scoured the Record in search of evidence showing that Youngs acted with a culpable state of mind, but no such evidence can be found. The Plaintiff has not identified **any** evidence suggesting that Youngs wanted to hurt the Plaintiff. Notably, Youngs did not punch, hit or kick the Plaintiff, nor did he use any type of weapon against the Plaintiff. Cf., <u>Wilkins v. Gaddy</u>, supra at 1179 (prisoner-plaintiff "alleged that he was punched, kicked, kneed, choked and body-slammed"). Similarly, there is no evidence showing that Youngs prolonged the handcuffing process any longer than necessary; there is no evidence that Youngs said anything, or did anything, that reflected any anger or hostility toward the

Plaintiff; there is no evidence that Youngs held any malice toward the Plaintiff; there is no evidence that Youngs had any desire to retaliate against the Plaintiff for any reason; and there is no evidence that Youngs continued to use any force against the Plaintiff after he completed his handcuffing assignment.

Furthermore, there is no evidence suggesting that Youngs was even aware that he was harming the Plaintiff.  In fact, the Record shows that even the Plaintiff, himself, did not realize he was being harmed.  See, <u>Martin Aff.</u>, supra at p. 4¶11; <u>Plaintiff's Memorandum</u>, supra at p. 4 ("Plaintiff was not immediately aware he had suffered any injuries and declined to talk to a nurse.").  If the Plaintiff did not know he was being harmed, we do not see how Youngs could have known.

In sum, the Plaintiff has not presented any evidence that would allow a reasonable juror to find that Youngs acted "maliciously and sadistically for the very purpose of causing harm" to the Plaintiff.  <u>Whitley v. Albers</u>, supra at 320-21, quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973), cert. denied <u>sub nom.</u>, <u>John v. Johnson</u>, 414 U.S. 1033 (1973).  As a result, the Court concludes, as a matter of law, that the Plaintiff cannot satisfy the subjective component of his Eighth/Fourteenth Amendment excessive force claim against Youngs.  Since the Plaintiff is unable to show that Youngs violated his constitutional rights, Youngs is entitled to qualified

immunity and, concomitantly, Youngs' Motion for Summary Judgment should be granted.

        ii)    <u>Giannini</u>.  The Plaintiff claims that Giannini used excessive force after the Plaintiff had been extracted from his room, and removed to another room.  While the Plaintiff was being held in the other room, waiting for his room to be searched, Giannini directed the Plaintiff to "lie still" with his "legs in the hog-tie position." <u>Martin Aff.</u>, supra p. 4¶10.  The Plaintiff deliberately defied that order, and placed his legs "flat on the bed." <u>Id.</u>  Giannini then forced the Plaintiff's legs into the compliant position "by pressing downward with extreme force for several minutes," and thereby "caused severe pain" to the Plaintiff's legs.  <u>Id.</u>

The Plaintiff claims that he "suffered substantial yellowish bruising" on both of his calves, which lasted "for approximately three weeks." <u>Id.</u> at p. 4¶12.  He allegedly "felt significant pain while standing or walking during that time." <u>Id.</u>  However, we have found no evidence suggesting that the Plaintiff ever sought any medical care for the alleged injuries to his legs.  Indeed, we find no evidence showing that the Plaintiff ever said anything to anyone at MSOP about any harm to his legs that resulted from the incident at issue here.  Given the meager evidence presented by the

Plaintiff, we find that he cannot sustain either the objective component, or the subjective component, of his Eighth/Fourteenth Amendment claim against Giannini.

Again, the Plaintiff alleges that Giannini "forcefully pressed [the Plaintiff's] legs downward toward his body in the hog-tie position and held them there for several minutes." See, <u>Supplemental Complaint</u>, supra at p. 2¶6 of Section IV. This description of Giannini's alleged actions does not, on its face, show the use of any "excessive force." We acknowledge the Plaintiff's averment that Giannini "press[ed] downward with extreme force," see <u>Martin Aff.</u>, supra at p. 4¶10, but this self-serving and conclusory statement provides little evidentiary support for the Plaintiff's claim. In light of the Plaintiff's adamant resistence to Giannini's directive, Giannini's response -- i.e., simply pushing the Plaintiff's legs into the required position -- cannot be deemed unreasonable or excessive.

The nature and extent of the Plaintiff's alleged injuries further negates the objective component of his claim against Giannini. We understand that a claimant is not required to establish "'some arbitrary quantity of injury'" in order to avoid an "automatic dismissal of an excessive force claim." <u>Wilkins v. Gaddy</u>, supra at 1178-1179, quoting <u>Hudson v. McMillian</u>, supra at 9. However, "[t]he extent of injury may * * * provide some indication of the amount of force applied." <u>Id.</u> at 1178; see also,

Nicolaison v. Brown, 2007 WL 781858 (D.Minn., March 13, 2007) at *1 (holding that the plaintiff's excessive force claim could not survive the defendants' Summary Judgment Motion, where the plaintiff's own testimony established that his "only injury was pain in his left hip that ultimately subsided," and his "hip was 'only a little swollen'").

Here, the Record shows that the Plaintiff's leg injuries lacked constitutional significance. He alleges that he experienced pain during the minutes that Giannini was "pressing" on his legs; he later noticed some bruising on his legs; and he allegedly felt "significant pain" for a few weeks while standing or walking. However, as we have already noted, the Plaintiff has offered no evidence showing that he ever sought any medical care for his alleged leg injuries.

We know that the Plaintiff had the opportunity and ability to seek medical attention, because he did so for his alleged arm injuries. In contrast, we find no showing that the Plaintiff ever said anything to anyone about any injury to his legs. The absence of any request for medical care reinforces our conclusion that the Plaintiff is unable to sustain the objective component of his excessive force claim against Giannini. See, Adeleke v. Heaton, 352 Fed.Appx. 904, 908, (5th Cir., November 5, 2009)(finding that "a sore shoulder" that a civil rights claimant "treated

with Tylenol and for which he neither sought nor required medical attention, was no more than de minimis and insufficient to support a claim of cruel and unusual punishment"); <u>Fillmore v. Page</u>, 358 F.3d 496, 504-05 (7th Cir. 2004) (excessive force claim dismissed where claimant's only evidence of injury was "discomfort," a "sore wrist" and a "bruise on his back," for which he required no medical attention); <u>Gillis v. Stoebner</u>, 90 Fed.Appx. 962, 963 (7th Cir. 2004)(where an excessive force claimant suffered "a 'half-inch' cut above his eye and bruising on his wrist, neither of which necessitated medical treatment," he "failed to show that these injuries were anything more than de minimis, caused by the de minimis force applied by the prison guards").

We further find that, even if the Plaintiff could sustain the objective component of his excessive force claim against Giannini, that claim still would fail, because he cannot sustain the subjective component. The Plaintiff's claim against Giannini, like his claim against Youngs, is not supported by any evidence of wantonness, malice or ill will. The evidence shows that the Plaintiff was not attacked or beaten; he was not brutalized; and he was not viciously abused. Giannini merely pressed the Plaintiff's legs "downward" into a position that the Plaintiff defiantly refused to assume as directed. There is nothing to suggest that Giannini harbored any anger or animosity toward the Plaintiff, or that Giannini had any type of culpable state of mind. There

is no evidence suggesting that Giannini had any intent to harm the Plaintiff, or that he had any reason to believe that he was harming the Plaintiff.

The Plaintiff has failed, once again, to present any evidence that would allow a reasonable juror to find in his favor on the subjective component of his excessive force claim. There is simply nothing in the Record that could lead a juror to believe that Giannini acted "maliciously and sadistically for the very purpose of causing harm" when he "pressed" the Plaintiff's legs for several minutes while the Plaintiff's room was being searched.

Therefore, the Court concludes that the Plaintiff cannot substantiate either the objective or subjective components of his excessive force claim against Giannini. As a result, Giannini is entitled to qualified immunity and, ultimately, Summary Judgment, because the Plaintiff cannot establish a violation of his constitutional rights.

iii)   <u>Benson</u>.   As noted, the Plaintiff is attempting to sue Benson, who is the CEO of MSOP, for establishing a policy that allegedly authorized the use of excessive force against MSOP patients. As explained by the Plaintiff, Benson is being sued because he allegedly "had personal administrative involvement in implementing an unconstitutional use of force policy, thereby

violating plaintiff's clearly established rights." Plaintiff's Memorandum, supra at p. 20. This claim must be dismissed for three (3) reasons.

First, the Plaintiff has not presented any evidence showing that the policy in question was actually in effect on the date when his claim arose. The policy is dated August 27, 2008, and it specifically states that it was implemented on August 4, 2008. See, Plaintiff's Exhibits, Docket No. 25-1, Exhibit 10. The incident giving rise to this lawsuit occurred on August 1, 2008 -- three (3) days **before the policy was implemented**.

The Plaintiff has speculated that the policy actually was in effect on August 1, 2008, despite what the policy itself clearly states. See, Plaintiff's Memorandum, supra at p. 19. However, the Plaintiff has not presented any evidence to support such speculation. We conclude that Benson cannot be liable to the Plaintiff by reason of a policy which, on its face, did not become effective until after the events giving rise to the Plaintiff's claim against Benson.

Second, even if the policy at issue was in effect when the Plaintiff's claim arose, the Plaintiff still could not successfully sue Benson based upon that policy. The Plaintiff contends that the policy authorizes MSOP staff to use excessive force against MSOP inmates, in violation of their Federal constitutional rights. We disagree. To

the contrary, the policy expressly **prohibits** the use of excessive force. In that respect, the policy provides as follows:

> Authorized facility staff may use **only** the amount of force that is reasonable and necessary to ensure the safety and security of the facility for patients, staff and the public and to maintain a therapeutic environment.

Plaintiff's Exhibits, Docket No. 25-1, Exhibit 10 [emphasis in original].

The policy further states that "[t]he use of force by staff without justification, or **the use of force with proper justification but in excessive amounts, will not be tolerated**, and "[e]very effort must be made, in applying use of force, to avoid injury to staff, patients, and the public, and to avoid damage to property and facilities. Id. [emphasis added]. Clearly, the policy at issue does **not** authorize MSOP staff to use excessive force against MSOP inmates in violation of their Federal constitutional rights. As a consequence, the fundamental premise of the Plaintiff's claim against Benson is unsustainable. For this additional reason, the Court finds that the Plaintiff's claims against Benson must be dismissed.

Finally, even if the policy at issue was in effect when the Plaintiff's claims arose, and even if that policy did authorize the use of excessive force, the Plaintiff's claims against Benson still would have to be dismissed. Since we have already determined that **the Plaintiff was not actually subjected to an unconstitutional use**

**of excessive force**, he cannot sustain an excessive force claim against Benson, even if Benson had somehow authorized the use of excessive force. See, <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); <u>Abbott v. City of Crocker, Mo.</u>, 30 F.3d 994, 998 (8th Cir. 1994)("The City cannot be liable in connection with either the excessive force claim or the invalid arrest claim, whether on a failure to train theory or a municipal custom or policy theory, unless * * * [an individual officer] is found liable on the underlying substantive claim."), abrogated on other grounds by, <u>Virginia v. Moore</u>, 553 U.S. 164 (2008); <u>Wilson v. Spain</u>, 209 F.3d 713, 717 (8th Cir. 2000) (where plaintiff's Fourth Amendment claims against individual police officer were dismissed, "[i]t necessarily follow[ed]" that his derivative Federal claims against the city and police chief were "dead in the water").

Therefore, we recommend that Defendant Benson's Motion for Summary Judgment also be granted, and the Plaintiff's claims against him should be dismissed.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendants' Motion for Summary Judgment [Docket No. 17] be GRANTED.

2.     That this action be DISMISSED WITH PREJUDICE.

Dated:  June14, 2010                         _s/Raymond L. Erickson_____
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than _June 28, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 28, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.